UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| **CODY RAY CASKEY**, | 4:17-CV-04070-KES |
| Plaintiff, | |
| vs. | |
| **WARDEN DOOLEY**, WARDEN AT MIKE DURFEE STATE PENITENTIARY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; and **DR. ADAMS**, PHYSICIAN AT SOUTH DAKOTA STATE PENITENTIARY; IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, | REPORT AND RECOMMENDATION |
| Defendants.[1] | |

**INTRODUCTION**

This matter is before the court on the *pro se* amended complaint of

plaintiff Cody Ray Caskey, formerly an inmate at the Mike Durfee State

Penitentiary (MDSP).  See Docket Nos. 1 & 13.  Defendants have filed a motion

for summary judgment.  See Docket No. 43.  This matter was referred to this

---

[1] Mr. Caskey initially named the South Dakota State Penitentiary (SDSP), the South Dakota Department of Health, and John and Jane Does as additional defendants.  The district court dismissed claims against these defendants upon screening Mr. Caskey's complaint and amended complaint pursuant to 28 U.S.C. § 1915.  See Docket No. 11.  In addition, although defendant Dooley was the warden of the Mike Durfee State Prison (MDSP) at the operative times covered by Mr. Caskey's complaints, he has since retired.  Defendants made no motion to substitute the new warden as a defendant, so the court has not *sua sponte* effected any change.

magistrate judge for a recommended disposition pursuant to 28 U.S.C.
§ 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen
E. Schreier, United States District Judge.  For the reasons discussed below, the
court recommends granting defendants' motion.

## FACTS

**A.    Deliberate Indifference Claim**

Mr. Caskey alleges defendant Dooley and defendant Adams were
deliberately indifferent to his serious medical needs by refusing to give him
hormone replacement therapy, in violation of the Eighth Amendment's
prohibition against cruel and unusual punishment.  See Docket Nos. 1 and
13.[2]  Defendants' statement of undisputed facts, unresponded to by
Mr. Caskey, is as follows.[3]  See Docket No. 45.

At the time of the events described by Mr. Caskey in his complaints in
this matter, he was incarcerated at the Mike Durfee State Prison (MDSP) in
Springfield, South Dakota.  Id. at p. 1, ¶ 1.  By the time he filed his complaint
in May, 2017, he had been transferred to the South Dakota State Penitentiary
(SDSP) in Sioux Falls, South Dakota.  Id. at pp. 1-2, ¶ 2.  He was paroled on
March 29, 2018, and currently resides in Texas.  Id.

---

[2] In screening Mr. Caskey's complaints, the district court construed the
amended complaint to supplement Mr. Caskey's original complaint rather than
substituting for the original.  See Docket No. 11.  This court employs the same
construction of those documents.

[3] The court has summarized and paraphrased defendants' statement and
reorganized it into chronological order.

2

Mr. Caskey was initially incarcerated in the South Dakota state prison system on approximately October 9, 2012. Id. at p. 13, ¶ 53. Dr. Christopher Davidson, a Sioux Falls psychiatrist, saw Mr. Caskey upon his first arrival at prison on October 9, 2012, for an intake mental health appointment. Id. at pp. 11, 13; ¶¶ 47, 53. The last time Dr. Davidson saw Mr. Caskey was May 9, 2014.[4] Id. at pp. 11-12, ¶ 48. Dr. Davidson's records did not document a diagnosis of gender identity disorder or dysfunction ("GID") or a prescription for hormone therapy. Id. at pp. 11-13, ¶¶ 47-55.

Dr. Davidson *did* diagnose Mr. Caskey with mood disorder, anxiety disorder, obsessive compulsive personality traits, and narcolepsy. Id. Dr. Davidson's notes did indicate that Mr. Caskey had reported to him he walked in a feminine way and pushed up his boobs. Id. Furthermore, the notes included Mr. Caskey's report of being hospitalized at age 14 in a mental institution because he was starting to reveal his sexuality and deal with it; he reported having been diagnosed at that time with bipolar disorder with psychotic features. Id. Mr. Caskey told Dr. Davidson that since age 14, he had become much more comfortable and that he had been mostly stable since that time, especially over the last 4-5 years (i.e. from approximately 2007-2012). Id.

Mr. Caskey told prison health officials in 2014 that he was a homosexual and had been diagnosed with HIV approximately 18 years earlier. Id. at

---

[4] During this period (2012-2014) Dr. Davidson provided services to inmates incarcerated in South Dakota state prisons. As of 2017, he had not worked for the state of South Dakota for several years. See Docket No. 45 at p. 11, ¶ 47. The record does not reflect exactly when Dr. Davidson ended his association with the state.

pp. 13-14, ¶¶ 56-57.  However, Mr. Caskey was noncompliant with anti-viral medications for HIV and those medications were eventually discontinued.  Id. During his initial period of incarceration, Mr. Caskey never mentioned having been diagnosed with GID or having previously been prescribed hormone replacement therapy.  Id. at pp. 13-15, ¶ 56-64.  During this initial period of incarceration, Mr. Caskey never requested that he be prescribed hormone replacement therapy.  Id.

Mr. Caskey was paroled from his initial incarceration in approximately March, 2015.  See Docket No. 48 at p. 2.  His parole was revoked in August, 2015, and he was paroled a second time sometime prior to August, 2016.  Id. During this brief, second, period of incarceration, Mr. Caskey told prison personnel in May, 2016, that he was transgender and, although he had previously been prescribed hormone treatment in Texas, he had been off of the treatment for about 10 years.  See Docket No. 45 at pp. 5-6, ¶¶ 18, 20; Docket No. 49 at p. 5, ¶ 16.

After being paroled for the second time in 2016, Mr. Caskey absconded from supervision.  See Docket No. 45 at p. 7, ¶¶ 27-30.  An arrest warrant was issued for him on August 30, 2016, for this alleged parole violation.  Id.  He was apprehended in Travis County, Texas, on approximately December 9, 2016.  Id.  He returned to South Dakota and his parole was revoked.  Id.  In anticipation of Mr. Caskey's return to the South Dakota prison system, on December 15, 2016, defendants requested Mr. Caskey's medical records from the Texas facility where he had been held.  Id. at p. 8. ¶ 31.

The first mention Mr. Caskey made to prison officials that he believed he suffered from GID was on January 27, 2017, when his medical history was taken upon his readmission to prison following his (second) parole revocation. Id. at p. 7, ¶ 26.  When Mr. Caskey received an initial physical examination upon reentering prison on February 1, 2017, he reported he had been receiving hormone replacement therapy in Texas immediately prior to his apprehension and he asked that his medication be continued.  Id. at p. 8, ¶ 32.  However, Mr. Caskey has admitted variously that he has been off of hormone replacement therapy for either 5 or 10 years, which would make his statement in February, 2017, untrue.  See Docket No. 10, p. 41; Docket No. 13, p. 57; Docket No. 49 at p. 5, ¶ 16.

On February 10, 2017, Mr. Caskey was the subject of a health intake interview.  Id. at p. 16, ¶ 66.  He told prison officials he was transgender and had attempted suicide at age 16 due to the stress of being transgender, though he denied any suicidal ideation at the time of the interview.  Id. at p. 16, ¶¶ 66-67.

The first grievance Mr. Caskey ever filed with defendants regarding his request for hormone replacement therapy was dated February 16, 2017.  Id. at pp. 4-5, ¶¶ 12, 19.  In his grievance, he stated he was not feeling proper after being taken off of prescription Premarin.  Id.  He requested "continuation" of Premarin to stabilize his emotions.  Id.

On February 22, 2017, Mr. Caskey reported to Health Services to follow up on his request for hormone therapy.  Id. at p. 8, ¶ 33.  Health Services told

him it had requested and received his medical records from Texas, but those records did not mention hormone replacement therapy.  Id.  Mr. Caskey suggested defendants had not sent their records request to the correct place. Id. at pp. 8-9, ¶ 34.  Defendants had Mr. Caskey fill out two blank forms which would allow defendants to make further requests for Mr. Caskey's medical records.  Id. at p. 9, ¶ 35.

On February 23, 2017, defendants sent Mr. Caskey an Informal Resolution Response (IRR--a response to his grievance), in which they stated they had received Mr. Caskey's outside medical records and were unable to verify any prescription for Premarin.  Id. at p. 4, ¶ 13.

On February 28, 2017, Mr. Caskey again contacted Health Services regarding his medical records.  Id. at p. 9, ¶ 36.  Health Services informed Mr. Caskey that they had sent a request for records, but no records were found.  Id.  Mr. Caskey then told defendants he had used his "female name" in Texas and they needed to request the records under that name.  Id.

Health Services then had Mr. Caskey sign yet another medical records request form and sent this out.  Id. at pp. 9-10, ¶ 39.  However, as of July 21, 2017, defendants had not been able to obtain any documentation that Mr. Caskey had ever been diagnosed with GID or that he had ever been prescribed hormone replacement therapy in connection with GID.  Id. at p. 10, ¶ 40.

Mr. Caskey was seen by Mental Health on June 8, 2017.  Id. at p. 11, ¶ 45.  At that appointment, Mr. Caskey told the mental health professional that

6

he had been previously diagnosed by Dr. Christopher Davidson, a Sioux Falls psychiatrist, with GID. Id. at p. 11, ¶ 46.

Defendants then obtained Dr. Davidson's records concerning Mr. Caskey. Those records are detailed above in connection with Mr. Caskey's initial period of incarceration. As discussed above, Dr. Davidson's records did not contain a diagnosis for GID, did not contain any prescriptions for hormone replacement therapy, and did not document any pre-incarceration diagnosis or treatment along those lines.

In response to defendants' IRR, Mr. Caskey filed a Request for Administrative Remedy (AR) in which he continued to maintain that he did not feel complete without taking Premarin and requested that defendants immediately prescribe that drug for him. Id. at p. 4, ¶ 14. He asserted in his AR that he was transgender and by law entitled to hormonal replacement. Id. Warden Dooley responded to Mr. Caskey's AR by informing him defendants had searched and could not find any substantiation in his medical records that he was ever prescribed hormone replacement. Id. at p. 5, ¶¶ 15-16. Therefore, the Warden denied the grievance as per the medical department. Id.

On June 14, 2017, Defendant Brad Adams submitted an authorization request to have Mr. Caskey evaluated by an endocrinologist for treatment of gender dysphoria. Id. at p. 17, ¶ 70. Dr. Adams' request was denied by the medical director because Mr. Caskey needed first to be diagnosed with GID. Id. at p. 17-18, ¶¶ 74-76. Without such a diagnosis, the medical director concluded, it was premature to determine whether hormone treatment was

7

warranted and appropriate.  Id.   Defendants advised Mr. Caskey in October, 2017, that they were in the process of hiring a consultant to address hormone replacement requests statewide.  Id. at p. 18, ¶¶ 77-78.  On November 13, 2017, defendants advised Mr. Caskey that Dr. Adams' request for an endocrinology appointment was being further reviewed.  Id. at p. 19, ¶ 81.

Defendants hired their GID consultant, who assumed her duties in May, 2018.  Id. at p. 22, ¶¶ 94-96.  However, Mr. Caskey had already been paroled in March, 2018, so he was never evaluated by this consultant.  Id.

Defendants assert numerous instances documented in Mr. Caskey's medical and administrative record which they believe shows manipulation and malingering on his part.  Id. at pp. 23-29, ¶¶ 97-126.  These are in connection with reports of back and neck pain, suicide threats, or attempts to obtain medications or separate shower facilities.  Id.  None of the instances relate directly to GID or hormone replacement therapy.  Id.  The court considers these to be irrelevant.[5]

---

[5] The court perceives defendants placed this information in the record in an attempt to discredit Mr. Caskey.  But if the issues on summary judgment come down to a credibility determination (which this court has concluded they do not), the result would be a denial of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Nunn v. Noodles & Co., 674 F.3d 910, 914 (8th Cir. 2012) (credibility determinations are inappropriate when evaluating summary judgment motions).  Thus, such information is unavailing to defendants under any scenario of a summary judgment motion.

### B.     Retaliation Claim

Defendant Dooley is the warden of the Mike Durfee State Prison.[6] <u>Id.</u> at p. 30, ¶ 127.  He never was at any operative time the warden of the South Dakota State Penitentiary.  <u>Id.</u> at p. 30-32.  Although Mr. Caskey asserts defendant Dooley's denial of hormone replacement therapy was in retaliation for Mr. Caskey's having previously brought a lawsuit involving Dennis Lauseng, Dooley was not a named defendant in the Lauseng lawsuit.  <u>See</u> <u>Caskey v. South Dakota State Penitentiary</u>, 4:14-cv-04010-KES, Docket No. 1 (D.S.D.).

Furthermore, the events alleged in Mr. Caskey's lawsuit involving Mr. Lauseng took place in Sioux Falls, South Dakota, while Mr. Caskey was an inmate at the South Dakota State Penitentiary and Mr. Lauseng was a correctional officer at that facility.  <u>Id.</u> at Docket No. 1.  Mr. Lauseng was not a correctional officer at the MDSP—in Springfield, South Dakota--where defendant Dooley is the warden.  <u>See</u> Docket No. 45 at pp. 30-31.  Defendant Dooley asserts he knew Mr. Lauseng was a corrections officer at SDSP, but was not closely acquainted with Mr. Lauseng.  <u>Id.</u> at p. 30, ¶ 128.

Finally, defendant Dooley asserts his denial of hormone replacement therapy to Mr. Caskey was based solely on the professional judgment of medical care providers and Dooley's own lack of medical expertise.  <u>Id.</u> at p. 31-32, ¶¶ 134-38.  The court takes judicial notice that Mr. Caskey's lawsuit involving Mr. Lauseng was filed in January, 2014, and dismissed because of a

---

[6] Defendant Dooley held that position at the operative times alleged in Mr. Caskey's complaint.  He has since retired from his position as warden and been replaced.

settlement agreement between the parties on February 29, 2016.    See Caskey
v. South Dakota State Penitentiary, 4:14-cv-04010-KES, Docket Nos. 1 and 82.

## DISCUSSION

### A.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary
judgment is appropriate where the moving party "shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law." FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the
light most favorable to the nonmoving party.  See Matsushita Elec. Co. v.
Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v.
Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp.,
600 F.3d 954, 957 (8th Cir. 2010) (per curiam).  Summary judgment will not lie
if the evidence is such that a reasonable jury could return a verdict for the
nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence
of any genuine issue of material fact and that the moving party is entitled to
judgment as a matter of law.  FED. R. CIV. P. 56(a).  Once the movant has met
its burden, the nonmoving party may not simply rest on the allegations in the
pleadings, but must set forth specific facts, by affidavit or other evidence,
showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at
256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions

of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

Though *pro se* litigants like Mr. Caskey are entitled to a liberal construction of their pleadings, FED. R. CIV. P. 56 remains equally applicable to them. Quam v. Minnehaha Co. Jail, 821 F.2d 522, 522 (8th Cir. 1987). The district court is not required to "plumb the record in order to find a genuine issue of material fact." Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th

Cir. 1996).  Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed *pro se* in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such *pro se* claims without regard for these special problems." Nickens v. White, 622 F.2d 967, 971 (8th Cir. 1980).  "When dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved." Ross v. Franzen, 777 F.2d 1216, 1219 (7th Cir. 1985).

Because Rule 56(a) allows summary judgment to be entered only if there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law, even when a summary judgment motion is unopposed, the court must still determine if summary judgment is appropriate. See Canada v. Union Elec. Co., 135 F.3d 1211, 1213 (8th Cir. 1997) (failure by nonmoving party to respond to summary judgment motion is not dispositive of the motion); United States v. One Parcel of Real Property, 27 F.3d 327, 329 n.1 (8th Cir. 1994) (same); FED. R. CIV. P. 56, Advisory Committee Notes to 2010 amendment, subdivision (e) (stating "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion.").

## B.    Injunctive Relief

In his complaint, Mr. Caskey asked for both monetary damages and injunctive relief in the form of immediate hormonal replacement.  See Docket No. 1 at p. 7.  The fact that Mr. Caskey has now been released from prison renders moot his request for injunctive relief.  See Smith v. Hundley, 190 F.3d

852, 855 (8th Cir. 1999) (discussing <u>Hickman v. Missouri</u>, 144 F.3d 1141, 1142 (8th Cir. 1998); and <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985)).

Because Mr. Caskey is no longer subject to the allegedly unconstitutional restrictions about which he complains in this lawsuit, his claims for injunctive and declaratory relief are moot.  <u>See</u> <u>Beaulieu v. Ludeman</u>, 690 F.3d 1017, 1024 (8th Cir. 2012) (holding plaintiffs' case was moot because they had been transferred out of the "annex" where they argued their constitutional rights were violated); <u>Gladson v. Iowa Dept. of Corr.</u>, 551 F.3d 825, 835 (8th Cir. 2009) (plaintiff's claims were rendered moot when he was no longer incarcerated).  In addition, Mr. Caskey has failed to assert that there are any extenuating circumstances which would enable him to present a live, justiciable controversy as required by Article III of the constitution despite the fact he is no longer incarcerated.

The court notes no evidence in the record to suggest defendants effected the release of Mr. Caskey in order to evade this court's jurisdiction. Accordingly the court recommends Mr. Caskey's request for injunctive relief be dismissed as moot.

## C.     Eighth Amendment Claim

### 1.     Warden Dooley is Not Liable

Defendants argue that, under the facts of this case, Warden Dooley cannot be held liable for Mr. Caskey's failure to receive medical treatment for

GID because Warden Dooley's sole role with regard to Mr. Caskey's medical care was to sign responses to grievances.

The court agrees. "[M]ere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983. 'The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see.'" Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994). "Failure to process or investigate grievances, without more, is not actionable under § 1983." Thomas v. Banks, 584 Fed. Appx. 291 (8th Cir. 2014) (emphasis added); Harris v. Caruso, 465 Fed. Appx. 481, 487 (6th Cir. 2012).

The Thomas holding does not foreclose the possibility that a supervisor's involvement by virtue of responding to a grievance--in addition to other facts-- might subject him or her to liability in an individual capacity. But here, there are no other facts alleged. Warden Dooley's mere approval of subordinates' responses to Mr. Caskey's grievances about his medical treatment is insufficient to subject him to § 1983 liability. This is especially true where, as here, the subordinates had medical expertise and Warden Dooley had none. The court respectfully recommends the Eighth Amendment deliberate indifference claim against Warden Dooley be dismissed with prejudice.

### 2. Dr. Adams Was Not Deliberately Indifferent

Defendants argue that Dr. Adams was not deliberately indifferent to a serious medical need of Mr. Caskey and, thus, is entitled to qualified immunity. To determine whether an official may partake of qualified immunity, two factors

14

must be determined:  (1) whether the facts that plaintiff has shown make out a violation of a constitutional right and (2) whether that constitutional right was "clearly established" at the time of the official's acts.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If the court finds that one of the two elements is not met, the court need not decide the other element, and the court may address the elements in any order it wishes "in light of the circumstances of the particular case at hand." <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).  Defendants are entitled to qualified immunity if the answer to either of the <u>Saucier</u> prongs is "no."  Here, the court finds Mr. Caskey has failed to show a violation of his Eighth Amendment rights and, therefore, Dr. Adams is entitled to qualified immunity.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.  <u>Allard v. Baldwin</u>, 779 F.3d 768, 771 (8th Cir. 2015).  That prohibition includes prison officials' deliberate indifference to the medical needs of inmates.  <u>Id.</u>  That is because "deliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Id.</u> at 104-05.

"[T]his does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence are not enough to state a claim. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (prisoner must show more than gross negligence and more than disagreement with treatment decisions).

Deliberate indifference requires the court to make both an objective and a subjective evaluation. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahja, 114 F.3d 778, 784 (8th Cir. 1997)). Mr. Caskey is required to show (1) that he suffered objectively serious medical needs and (2) that defendants actually knew of but deliberately disregarded those needs. Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman, 114 F.3d at 784.

To establish liability, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A plaintiff asserting deliberate indifference "must show more than even gross negligence"—he "must establish a 'mental state akin to criminal recklessness: disregarding a known risk to the inmate's health.' " Allard, 779 F.3d at

771-72.  A plaintiff can show deliberate indifference by demonstrating grossly incompetent or inadequate care; showing a defendant's decision to make a less efficacious and easier course of treatment; or demonstrating that a defendant denied access to or intentionally delayed medical care.  Id. at 772.

The Eighth Circuit addressed an inmate's allegation of deliberate indifference in regard to hormone replacement therapy in Reid v. Griffin, 808 F.3d 1191 (8th Cir. 2015).  Reid was an inmate in an Arkansas prison who alleged she[7] suffered from GID and sought hormone-replacement therapy from prison authorities.  Id. at 1192.  After Reid cut off one of her testicles, she met with the prison's GID committee, which determined Reid did not meet the criteria for a diagnosis of GID.  Id.  Defendants did not provide the requested therapy and Reid then cut off her remaining testicle.  Id.  Eventually, Reid brought a § 1983 action for deliberate indifference to her serious medical needs in violation of the Eighth Amendment.  Id.  The district court granted summary judgment in defendants' favor, and the Eighth Circuit affirmed.  Id.

Although Reid had been evaluated by numerous mental-health professionals, and although she had a number of other mental health issues for which she received treatment and monitoring, none of the examining professionals diagnosed her with GID or recommended hormone-replacement therapy.  Id.  The court characterized Reid's belief that she did suffer from GID

---

[7] Reid was born a male but identified as female.  The Eighth Circuit opinion referred to Reid using female pronouns, as does this court.

as a mere disagreement with her evaluators' diagnoses and held that such disagreement was not actionable under § 1983.  Id.

The Reid decision has been applied by several district courts.  In this district, Reid was applied to dismiss an inmate's claim on screening under 28 U.S.C. § 1915.  Butterfield v. Young, 2018 WL 1640594 at *2 (D.S.D. Apr. 5, 2018).  The court took as true Butterfield's allegations in his complaint that he had been diagnosed with GID and was participating in psychotherapy.  Id. at * 1.  Butterfield alleged defendants were deliberately indifferent to his serious medical needs because they would not provide hormone replacement therapy and gender reconstruction surgery.  Id.  The court noted that Butterfield did not allege defendants had denied all treatment to him, nor did he allege defendants denied hormone replacement therapy without evaluating Butterfield for the appropriateness of such therapy.  Id. at *2.  The court concluded Butterfield failed to state a claim and dismissed his Eighth Amendment claim. Id.

The Eastern District of Arkansas applied Reid in Derx v. Kelley, 2017 WL 2874627 (E.D. Ark. Jun. 19, 2017).  Derx was an inmate in an Arkansas prison who alleged he was transgender and filed suit under § 1983, seeking damages, hormone replacement therapy, and a transfer to an appropriate prison unit that would provide the requested treatment.  Id. at *1.  Defendants moved to dismiss Derx' complaint for failure to state a claim.  Id.  The court interpreted Eighth Circuit precedent to suggest that "the threshold of deliberate indifference is not met where some treatment is provided, albeit not the specific

18

treatment the inmate desires." Id. at *3 (citing Reid, 808 F.3d at 1192-93; Long v. Nix, 86 F.3d 761, 765-66 (8th Cir. 1996); White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988)).

The court in Derx also evaluated authorities from other jurisdictions and concluded that a "blanket rule," rather than an individualized decision, that hormone therapy would not be prescribed for an inmate "may constitute deliberate indifference." Derx, 2017 WL 2874627 at * 3 (citing Smith v. Hayman, 489 Fed. Appx. 544, 547 (3d Cir. 2012); Fields v. Smith, 653 F.3d 550, 555-57 (7th Cir. 2011); De'Lonta v. Angelone, 330 F.3d 630, 635 (4th Cir. 2003); Allard v. Gomez, 9 Fed. Appx. 793, 794 (9th Cir. 2001)(unpub'd)). However, the court found Derx's case did not involve application of a "blanket rule," but rather a disagreement between the inmate and medical providers about the appropriate treatment. Id. at *4. Such facts do not give rise to § 1983 liability under the Eighth Amendment concluded the court. Id.

In Brown v. Dept. of Health & Human Servs., 2017 WL 944191 (D. Neb. Mar. 9, 2017), the District of Nebraska also applied Reid. Brown claimed that he suffered from GID and that defendants refused to evaluate him or to provide him with hormone replacement therapy. Id. at *1, 3. In that case Brown was a civilly-committed patient, not a prison inmate, so the court applied the Due Process clause to Brown's claim rather than the Eighth Amendment. Id. at *3. However, the court held the deliberate indifference standard borrowed from the Eighth Amendment was the applicaple Due Process standard for Brown's claims. Id. The Brown court's opinion was merely a screening opinion under

19

28 U.S.C. § 1915 to determine if Brown had sufficiently pleaded facts which, if true, would allow him to recover.  Id. at *1-3.  The court held Brown had pleaded enough facts to survive screening, although it noted it "remained to be seen whether Plaintiff has been medically diagnosed with gender identity disorder or dysphoria and whether medical professionals think [estrogen therapy] suggested by Plaintiff . . . is appropriate."  Id. at *4 n.2.

Here, the facts of Mr. Caskey's case indicate defendant Adams is entitled to summary judgment.  Although Mr. Caskey alleges in his unverified complaint and amended complaint that he has GID and has been taking hormones since he was 14, those allegations do not enjoy evidentiary support.  Specifically, defendants sought out Mr. Caskey's medical records from both inside and outside the South Dakota prison system and found no diagnosis anywhere of GID.  Furthermore, defendants found no support for homone replacement prescriptions for Mr. Caskey in those medical records.  Like the inmate in Reid, Mr. Caskey has been given mental health care, and has been diagnosed with other mental disorders, but he has never been diagnosed with GID or been prescribed hormone replacement therapy.

Mr. Caskey has been incarcerated for several of the last six years.  He was incarcerated from 2012 to March 29, 2018, with two intervening periods of parole.  His parole was revoked August, 2015 (following his release in March, 2015), and his parole was revoked again in December, 2016 (following his release sometime prior to August, 2016).  Despite his allegations of a long-standing GID diagnosis and long-standing prescriptions for hormones,

Mr. Caskey never received hormone replacement therapy during any of the above periods of incarceration.  Furthermore, he never requested such therapy from prison officials until February, 2017, three months before he filed the instant lawsuit.  Records obtained from non-prison medical providers are likewise devoid of a GID diagnosis or prescription for hormones.

When defendant Adams received Mr. Caskey's request for hormone replacement therapy, he did not treat that request with deliberate indifference.  Rather, Mr. Caskey was sent to Mental Health for an evaluation.  When that evaulation did not result in a GID diagnosis or a prescription for hormone therapy, defendant Adams made a request for Mr. Caskey to be seen by an endocrinologist outside the prison.  That the medical director turned down Dr. Adams' request for an outside consult does not make Dr. Adams deliberately indifferent to Mr. Caskey's serious medical needs.  Adams and other prison officials diligently sought out Mr. Caskey's medical records for evidence of a diagnosis and prescription.  In addition, the prison hired a medical professional to evaluate Mr. Caskey and others for GID and to make recommendations for their treatment.  But for Mr. Caskey's release from prison, he would have been evaluated by this professional.

One might consider whether the delay from October, 2017, until May, 2018, (during which time the prison was hiring its medical professional to evaluate GID), was an undue delay.  But that delay cannot be laid at Dr. Adams' door.  Dr. Adams sought further care for Mr. Caskey in June, 2017,

shortly after Mental Health evaluated Mr. Caskey and found no grounds for a GID diagnosis.

Under the facts presented by defendants' summary judgment, this case is controlled by Reid. The Eighth Amendment deliberate indifference standard requires Mr. Caskey to demonstrate a serious medical need--"one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman, 114 F.3d at 784. Here, prison officials tried to locate a diagnosis from an outside medical care provider. Failing that, they had Mr. Casky evaluated by Mental Health in the prison. That, too, failed to result in a diagnosis of GID. Mr. Caskey's medical condition is not one that is so obvious that even a layperson would easily recognize the necessity for hormone replacement therapy. In this case, even the medical professionals disagreed. Dr. Adams thought a consult with an endocrinologist was in order. The medical director for the prison disagreed with that conclusion.

Without a verified diagnosis of gender identity disorder or dysphoria, Mr. Caskey's lawsuit to try to obtain hormone replacement therapy represents a difference in opinion between himself and his medical care providers. Such a difference in opinion does not support a deliberate indifference claim. Accordingly, the court respectfully recommends Mr. Caskey's deliberate indifference claim be dismissed with prejudice.

**D.    Retaliation Claim**

Mr. Caskey states the following, in its entirety, in support of his

retaliation claim:

> I believe Warden Dooley has retaliated against me because of his
> relationship with Dennis Lauseng, a former captain for SDSP,
> whom I was raped by.  I settled out of court for CIV:14:4010 and
> since then have been a target for retaliation by the wardens,
> officers and staff.  I believe Warden Dooley is responsible for his
> staff and their actions against me.

See Docket No. 13 at pp. 2-3.

"A prisoner's Eighth Amendment rights are violated if prison officials

'impose a disciplinary sanction against a prisoner in retaliation for the

prisoner's exercise of his constitutional right.'" Meuir v. Greene County Jail

Employees, 487 F.3d 1115, 1119 (8th Cir. 2007).  See also Haynes v.

Stephenson, 588 F.3d 1152, 1155 (8th Cir. 2009).  A *prima facie* case of

retaliatory discipline requires a plaintiff to show (1) that he exercised a

constitutionally protected right, (2) that he was subsequently disciplined by

prison officials, and (3) the motive for imposing the discipline was the exercise

of the constitutional right.  Id.

To prevail on a claim of retaliation for violation of a First Amendment

right, the plaintiff must show (1) that he engaged in a protected activity,

(2) that the government defendant took adverse action against the plaintiff that

would chill a person of ordinary firmness from continuing in the activity; and

(3) that the adverse action was motivated at least in part by the exercise of the

protected activity.  Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013).

23

Here, Mr. Caskey makes *no* allegation of any retaliatory discipline.  To the extent his complaint and amended complaint can be read to assert that denial of hormone replacement therapy was itself the retaliation, that claim fails for the same reason the Eighth Amendment claim failed.  Mr. Caskey has failed to produce any proof that he has ever been diagnosed with gender identity disorder or dysphoria or that he ever was prescribed hormone replacement therapy.  Without some substantiation of these allegations, as discussed above, defendant Dooley's denial of Mr. Caskey's request for hormone replacement therapy was justified.  It did not constitute unconstitutional retaliatory conduct.

Furthermore, defendant Dooley's properly supported factual assertions that he did not know Mr. Lauseng (the subject of the 2014 lawsuit) well and that he relied solely upon medical expertise in denying Mr. Caskey's request for hormone replacement therapy are not contravened by Mr. Caskey.  In addition, the 2014 lawsuit was dismissed before the events described in Mr. Caskey's instant complaint, defendant Dooley was never the warden of SDSP, and Warden Dooley was not a named defendant in the 2014 lawsuit.  These facts support the court's conclusion as well.  The court respectfully recommends Mr. Caskey's retaliation claim be dismissed with prejudice.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends granting defendants' motion for summary judgment

[Docket No. 43] and dismissing plaintiff Cody Caskey's complaint and amended complaint with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED August 24, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge